<table>
<tr><td>118</td><td>259</td></tr>
<tr><td>124</td><td>70</td></tr>
<tr><td>124</td><td>71</td></tr>
</table>

PRENTIS *v.* RICHARDSON'S ESTATE.

1. MORTGAGES—FORECLOSURE—DECREE FOR DEFICIENCY—NOTICE.
　　Under 2 How. Stat. § 6702, authorizing the court in foreclosure proceedings to render a personal decree against the mortgagor for a deficiency "on the coming in of the report of sale," a provision in the original decree that the mortgagor shall be personally liable for a deficiency, "if any," is insufficient; the statute contemplating a supplemental petition, with notice to the mortgagor.

2. SAME—DISCHARGE IN BANKRUPTCY—EFFECT.
　　A mortgagor who receives a discharge in bankruptcy pending foreclosure proceedings is not liable to a decree for deficiency.

Error to Wayne; Donovan, J. Submitted June 17, 1898. Decided September 27, 1898.

John F. Prentis presented a claim against the estate of David M. Richardson, deceased. The claim was disallowed by the commissioners, and claimant appealed to the circuit court. From a judgment for the estate on verdict directed by the court, claimant brings error. Affirmed.

*H. G. Holmes*, for appellant.

*Dickinson, Thurber & Stevenson* and *Charles B. Warren*, for appellee.

MOORE, J. Prior to 1877, Mr. Richardson was liable upon a note secured by a mortgage. Foreclosure proceedings were commenced in August, 1877. The subpœna was personally served. The defendant did not appear in the case, and his default was taken December 20, 1882. A decree was entered, finding the amount due on the note and mortgage to be $9,313, directing a sale of the premises, and for the deficiency, if any, it was decreed defendant Richardson should be liable personally, and execution should issue therefor. In April, 1883, the commissioner made his report of sale, and also reported the deficiency was $5,581. This report was confirmed. No further proceedings were ever had in the cause. Mr. Richardson died in September, 1889, when Mr. Prentis presented a claim against his estate for the amount of the deficiency. The claim was disallowed by the commissioners. An appeal was taken to the circuit court, where the judge directed a verdict in favor of the estate.

The record shows Mr. Richardson filed a petition in bankruptcy in December, 1877. Among his list of debts was the debt secured by the mortgage. Mr. Prentis, doubtless because he preferred not to surrender his security, did not prove his debt in the bankruptcy court. In April, 1878, Mr. Richardson was discharged in bankruptcy. On the part of the estate it is contended there are two defenses to the claim:

1. The discharge in bankruptcy.

2. That the case is still pending in chancery, and, claimant having elected to proceed in chancery, he must pursue his remedy there until authorized to pursue it somewhere else.

As to the first of these defenses, Mr. Prentis urges it might be good against a judgment rendered prior to the discharge in bankruptcy, but that it is not good against this decree, because it was rendered after the discharge was procured. It becomes important to inquire whether this personal decree was regularly taken. The right to a personal decree for the deficiency in a foreclosure proceeding is purely statutory. It is not until the coming in of the report of sale, showing a deficiency, that the court can make a decree directing the payment by the mortgagor of any balance remaining unpaid after a sale of the premises. Section 6702, 2 How. Stat., provides:

"When a bill shall be filed for the satisfaction of a mortgage, the court shall not only have power to decree and compel the delivery of the possession of the premises to the purchaser thereof, but, on the coming in of the report of sale, the court shall have power to decree and direct the payment by the mortgagor of any balance of the mortgage debt that may remain unsatisfied after a sale of the mortgaged premises, in the cases in which such balance is recoverable at law, and for that purpose may issue the necessary executions, as in other cases, against other property of the mortgagor."

This section has frequently been construed by the courts. In *Johnson* v. *Shepard*, 35 Mich. 122, it is said:

"Under the original equitable jurisdiction, there never was any power to make a personal decree against even the mortgagor himself. His personal obligation could only be enforced in a suit at law. It was an innovation which provided that, in case there was a deficiency left after exhausting the land, the debt might be collected in the same proceedings. The first Michigan statute authorizing this remedy was the chancery act of April 23, 1833, and was confined strictly to the mortgagor himself. Section 37. Before the Revised Statutes of New York,

there was no remedy in equity against anything but the lands mortgaged, in that State (*Dunkley* v. *Van Buren*, 3 Johns. Ch. 330), and such was the general rule (*Downing* v. *Palmateer*, 1 T. B. Mon. 66). The debt could only be collected at law. The Michigan Revised Statutes of 1838 prohibited proceeding at law and in equity at the same time, and provided that the personal claim might be pursued against the mortgagor; but in giving this power it was made to act as a supplementary process. 'On coming in of the report of sale, the court shall have power to decree and direct the payment by the mortgagor of any balance of the mortgage debt that may remain unsatisfied after a sale of the premises, in the cases in which such balance is recoverable at law, and for that purpose may issue the necessary executions, as in other cases, against other property of the mortgagor.' Rev. Stat. 1838, p. 376, § 105. * * * Our present statutes on this subject are in all respects the same with those of 1838, and those were borrowed from the laws of New York. The language is unambiguous in requiring the action which shall finally authorize the issue of an execution to be based on the confirmation of a report of deficiency. The proceeding is essentially new and supplementary, and not a mere continuation of the foreclosure. It resembles the proceeding had on the coming due of a new installment, which, although it is usually provided for in the original decree, is nevertheless as distinct a proceeding as a *scire facias* for further breaches of a bond. *Brown* v. *Thompson*, 29 Mich. 72. It was not until 1840, in *McCarthy* v. *Graham*, 8 Paige, 480, that it was settled by any reported decision that a contingent provision for personal liability could be inserted in the original decree. But it is merely contingent. It has never been held that an absolute decree can be rendered before the confirmation of the report, so as to operate as a final judgment. The practice in Michigan has generally conformed to the chancellor's decision in *McCarthy* v. *Graham*."

See, also, *Howe* v. *Lemon*, 37 Mich. 164; *Gies* v. *Green*, 42 Mich. 107; *Ransom* v. *Sutherland*, 46 Mich. 489; *McCrickett* v. *Wilson*, 50 Mich. 513; *Vaughan* v. *Black*, 63 Mich. 215; *Shields* v. *Riopelle*, Id. 458.

In *Shelden* v. *Erskine*, 78 Mich. 627, at page 633, Justice CAMPBELL said, speaking of the jurisdiction of the court to render a personal decree in such cases:

"It is also to be exercised, and the trial of liability had, on a new hearing, after the deficiency is reported.   Any decree in advance of sale made for payment is, at best, no more than declaratory, and can fix no rights."

The cases hold very clearly the attempt to take a personal decree is substantially a new proceeding, requiring personal service upon the defendant, if he can be found. In this case it was the duty of the complainant, before a personal decree could be taken against the defendant, to serve him personally with notice of the application.   When the decree was taken, Mr. Richardson was in default. He could not contest the amount due on the mortgage, for there was no dispute about the amount.   He could not question the lien upon the land, for the bankruptcy proceedings could not discharge the lien.   He had no reason to suppose an attempt would be made to take a decree against him personally, for the statute, by its terms, did not authorize such a decree until after sale; and, as construed by the courts, the statute did not permit the taking of a personal decree without the filing of a petition, and notice to him personally.   He had a right to answer the petition.   While he could not dispute the amount which was due upon the mortgage, he could set up any defense which would operate to discharge his liability upon the debt.   He would have had a right to show that the debt secured by the mortgage was in existence when the bankruptcy proceedings were commenced, and was provable in the bankruptcy proceedings, and his discharge in bankruptcy.   The discharge would not be a defense to the mortgage, but it would be a defense to a decree against Mr. Richardson personally for deficiency.   *Mc-Dougald* v. *Reid*, 5 Ala. 810; *Ewing* v. *Peck*, 17 Ala. 339; *Roberts* v. *Wood*, 38 Wis. 60; *Luning* v. *Brady*, 10 Cal. 265.   Mr. Richardson was never informed it was proposed to take a personal decree against him for the deficiency.   He never had an opportunity to plead his discharge in bankruptcy to an application of that character. He was entitled to such an opportunity before he could be

cut off by the decree. *Dresser* v. *Brooks*, 3 Barb. 429; *McDonald* v. *Ingraham*, 30 Miss. 389 ( 64 Am. Dec. 166 ); *Boynton* v. *Ball*, 121 U. S. 457.

If he had been properly brought into court before the personal decree was taken, and failed to plead his discharge in bankruptcy, a different question would be presented.

The judgment is affirmed.

The other Justices concurred.