## KARL KRAHL EXCAVATING COMPANY v. THEODORE R. GOLDMAN AND OTHERS.

208 N. W. 2d 719.

June 8, 1973—No. 43580.

*Faegre & Benson* and *Peter R. Kitchak,* for appellants.
*Arthur D. Walsh* and *Gordon J. Berg,* for respondent.

Heard before Knutson, C. J., and Rogosheske, Peterson, and Gillespie, JJ.

PER CURIAM.

Appeal from a judgment of the district court directing foreclosure of a mechanics lien upon property owned by several of the defendants and from an order denying a motion for a new trial. The trial court, sitting without a jury, found the facts to be in favor of plaintiff, Karl Krahl Excavating Company (Krahl), and against defendant landowners and general contractor. A counterclaim made by the defendants was disallowed. Judgment was entered for Krahl in the full amount of its $23,656.50 claim, plus interest, together with costs and $2,500 attorneys' fees.

1. The principal issue presented by this appeal is whether the trial court's findings are supported by the evidence. The findings which are of importance on this appeal are: (1) An initial oral agreement was entered into by Krahl and defendant Theodore Goldman on behalf of B. T. & A. Construction Com-

pany (B. T. & A.) on or about April 16, 1968, and a contemporaneously signed document did not constitute a binding agreement; (2) this initial oral agreement was subsequently modified by another oral agreement on or about June 12, 1968; and (3) plaintiff rendered substantial performance of all work requested of it, thereby negating defendants' counterclaim alleging improper workmanship.

The factual situation surrounding the dispute is not extremely complicated, but the parties, at trial, evinced almost total disagreement as to those particulars which are of critical importance to a resolution of this matter. All parties admit that there was an original agreement whereby Krahl would do certain excavation work on an apartment complex being constructed by defendant B. T. & A. on land owned by defendant landowners and that Krahl was to be paid $30,000 for this work. The dispute at trial concerns the nature and terms of this agreement and the later alleged modification of the agreement as well as the work that was actually performed by plaintiff. The trial court accepted plaintiff's version of the events which occurred contemporaneous with and subsequent to the original agreement.

Between April 19, 1968, and August 4, 1969, plaintiff performed excavating services and furnished machinery in conjunction with the construction project. These improvements were initially undertaken pursuant to an agreement with defendant Goldman, acting as part owner and on behalf of defendant B. T. & A. On the date the initial agreement was reached, both parties signed a written document which contained various specifications. The substance of this agreement was for certain excavating services which were to be performed for a lump sum of $30,000. Plaintiff thereupon began performance of the contract.

As a consequence of certain job conditions arising after excavation had begun, plaintiff and defendant Goldman allegedly entered into the agreement on June 12, 1968, whereby the original agreement was abandoned. This subsequent agreement was

to result, henceforth, in the payment, on an hourly basis, for services rendered by plaintiff. Defendants alleged that the written document signed on April 16, 1968, was a binding agreement, not subsequently modified, and that plaintiff's improper performance resulted in additional expenses to defendants.

The substantial volume of testimony and considerable number of exhibits indicate that the factual issues were, as the trial court stated, thoroughly and comprehensively litigated. Karl H. Krahl, president of plaintiff corporation, was questioned for 3 days of the trial, his testimony encompassing almost half of the transcript. Since the issues in this case center around which of two versions of the factual setting was "correct," the trial court's acceptance of Krahl's version, as opposed to defendant Goldman's version, will not be set aside unless such finding is clearly erroneous. See, In re Estate of Balafas, 293 Minn. 94, 198 N. W. 2d 260 (1972).

There is sufficient evidence to support the trial court's findings that the papers signed by Krahl and Goldman on April 16, 1968, are not intrinsically sufficient to constitute a contract and were not intended by the parties to serve as such. The agreement upon which plaintiff undertook excavation of the subject premises was, as the trial court could well find, an informal understanding reached orally by the parties whereby plaintiff would perform the site grading and excavation of certain footings for the sum of $30,000.

The evidence likewise amply supports the trial court's finding that, as a consequence of certain job conditions arising after excavation had begun, plaintiff and defendant Goldman entered into the June 12, 1968, oral agreement whereby the original agreement was abandoned and a new agreement was reached. This new agreement involved the performance by plaintiff of all work requested by defendant Goldman with plaintiff being compensated by payment on an hourly rate basis.

The record clearly supports the finding that the reasonable value of services rendered by plaintiff was $49,656.50 and that

plaintiff had only received $26,000 in payments.

Defendants raise numerous other issues which are equally without merit. Defendants' counterclaim was properly denied. Apparently the only matter which is not challenged by defendants is the trial court's determination of the reasonable attorneys' fees incurred by plaintiff. Accordingly, the judgment awarding plaintiff $23,656.50 together with attorneys' fees of $2,500 is affirmed.

2. Defendants mistakenly argue that the trial court has entered personal judgment against all of the defendants as individuals. This is not so. The trial court ordered only that—

"* * * said lien shall be foreclosed * * *, by sale of so much of the above described premises not exceeding one acre in area, * * * said foreclosure to be in the manner provided for the foreclosure of mortgages."

The creation and enforcement of a mechanics lien is governed by statute. Minn. St. 1971, § 514.01, creates a lien upon the real estate for persons who contribute to the improvement of such real estate. No direct contractual relation with the owner is necessary, but it is necessary that the improvement be made with the consent of the owner, either express or implied. The requirement of consent is satisfied where, as here, the services were performed upon the premises at the request of the contractor of the owner. Laird v. Moonan, 32 Minn. 358, 20 N. W. 354 (1884). The lien, as provided by Minn. St. 514.10, is enforceable by an action in the district court where the property is situated, and the action shall be commenced and conducted in the same manner as the foreclosure of a mortgage.

The judgment in this case is not an ordinary personal judgment against the owner or party personally liable for the debts, so as to be a lien upon other real estate of the owner or party personally liable or to permit execution before the sale of the real estate has been completed. Arendt & Wartman v. Vossen, 154 Minn. 368, 191 N. W. 820 (1923); Thompson v. Dale, 58 Minn. 365, 59 N. W. 1086 (1894). The mechanics lien claimant must

exhaust his rights against the property by sale before any deficiency judgment may be entered personally against a party personally liable. Smude v. Amidon, 214 Minn. 266, 7 N. W. 2d 776 (1943). The trial court plainly undertook to observe the controlling statutory procedures.

Affirmed.